**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **MIDWEST GOODS INC. D/B/A MIDWEST DISTRIBUTION AND MIDWEST DISTRIBUTION ILLINOIS**, a corporation, and **KAMRAN YASIN**, an individual, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR PERMANENT INJUNCTION** |

Plaintiff, the United States of America, by and through its undersigned counsel, on behalf of the United States Food and Drug Administration ("FDA"), for its Complaint alleges as follows:

**NATURE OF THE CASE**

1.      Defendant Midwest Goods Inc. d/b/a Midwest Distribution and Midwest Distribution Illinois ("Midwest Goods") and its CEO and Owner Defendant Kamran Yasin (collectively, "Defendants"), receive and sell electronic nicotine delivery system ("ENDS") products, including those marketed as containing flavors such as Blow Pop, Cherry Slushy, Lime Passion Fruit, Pink Candy, Sour Fruity Worms, Sweet Tooth, and Watermelon Bubblegum, among many others. On January 8, 2025, FDA previously warned Defendants that they have been unlawfully selling and/or distributing adulterated and misbranded ENDS products (hereinafter, "Defendants' ENDS products") in violation of the Federal Food, Drug, and Cosmetic Act ("the

Act"), 21 U.S.C. §§ 301-399i. Because Defendants have continued to unlawfully receive and sell unauthorized ENDS products, Plaintiff brings this action to put an end to Defendants' misconduct.

2.      This statutory injunction proceeding is brought under the Act, 21 U.S.C. § 332(a), to permanently enjoin Defendants from doing or causing the following prohibited acts:

        a.      introducing or delivering for introduction into interstate commerce ENDS products, which are tobacco products within the meaning of 21 U.S.C. § 321(rr), that are adulterated and misbranded, in violation of 21 U.S.C. § 331(a); and

        b.      receiving in interstate commerce ENDS products, which are tobacco products within the meaning of 21 U.S.C. § 321(rr), that are adulterated and misbranded, and delivering or proffering for delivery such tobacco products for pay or otherwise, in violation of 21 U.S.C. § 331(c).

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter and all parties to this action under 21 U.S.C. § 332(a), as well as 28 U.S.C. §§ 1331, 1337, and 1345, because this case involves claims arising under federal laws regulating commerce and is commenced by the United States of America as Plaintiff.

4.      Venue in this District is proper under 28 U.S.C. § 1391(b) and (c), because Defendants transact business in DuPage County, within this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## DEFENDANTS

5.      Defendant Midwest Goods is an Illinois corporation located at 1001 Foster Ave., Bensenville, IL 60106 (hereinafter, the "facility"), within the jurisdiction of this Court. Defendant Midwest Goods conducts its ENDS product operations from the facility.

6.      Defendant Kamran Yasin is the owner and CEO of Midwest Goods and the most responsible person at the firm.

**LEGAL FRAMEWORK**

7.      The Act defines a "tobacco product" as including "any product made or derived from tobacco, or containing nicotine from any source, that is intended for human consumption, including any component, part, or accessory of a tobacco product." 21 U.S.C. § 321(rr).

8.      A "tobacco product" within the meaning of the Act is generally subject to the requirements of Subchapter IX of Chapter 9 to Title 21 of the United States Code. *See* 21 U.S.C. § 387a(b) (providing that Subchapter IX shall apply to "all cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco and to any other tobacco products that [FDA] by regulation deems to be subject to this subchapter."); *see also* 81 Fed. Reg. 28974, 28975-76 (May 10, 2016) (deeming all products meeting the definition of "tobacco product" at 21 U.S.C. § 321(rr), except accessories of such newly deemed products, to be subject to Subchapter IX).

9.      ENDS products generally meet the definition of "tobacco product" at 21 U.S.C. § 321(rr) and include: "devices, components, and/or parts that deliver aerosolized e-liquid when inhaled." FDA, *Guidance for Industry: Enforcement Priorities for Electronic Nicotine Delivery Systems (ENDS) and Other Deemed Products on the Market Without Premarket Authorization (Revised)\** (Apr. 2020), at 9–10, https://go.usa.gov/xuvn5. E-liquids "are a type of ENDS product and generally refer to liquid nicotine and nicotine-containing e-liquids (*i.e.,* liquid nicotine combined with colorings, flavorings, and/or other ingredients)." *Id.*

10.      The Act also defines "new tobacco product" to include "any tobacco product . . . that was not commercially marketed in the United States as of February 15, 2007." 21 U.S.C. § 387j(a)(1). Under 21 U.S.C. § 387j(a)(2), a manufacturer is required to obtain premarket review of new tobacco products and obtain FDA's marketing authorization.

11.     Depending on the tobacco product, a manufacturer may receive FDA marketing authorization through one of three pathways.

    a.     First, the manufacturer may submit a premarket tobacco product application ("PMTA") under 21 U.S.C. § 387j. For a PMTA, FDA issues a marketing granted order ("MGO") permitting marketing of the new tobacco product if it finds, among other things, that the product is appropriate for the protection of the public health. *See* 21 U.S.C. § 387j(c).

    b.     Second, a manufacturer may submit a substantial equivalence ("SE") report under 21 U.S.C. § 387j(a)(2)(A)(i). For an SE report, FDA issues an SE order permitting marketing of the new tobacco product if it determines, among other things, that the product is substantially equivalent to a tobacco product commercially marketed in the U.S. as of February 15, 2007, or a tobacco product marketed after that date but which FDA previously determined to be substantially equivalent. *See* 21 U.S.C. § 387e(j).

    c.     Third, a manufacturer may submit an exemption request submitted under 21 C.F.R. § 1107.1 and a report under 21 U.S.C. § 387e(j)(1) ("abbreviated report"). FDA reviews those submissions and, if it determines that there has been an appropriate showing, may issue a "found-exempt" order. *See* 21 U.S.C. § 387e(j)(3)(A).

12.     A new tobacco product is required by 21 U.S.C. § 387j(a) to have premarket review unless it has an SE order or found-exempt order in effect. 21 U.S.C. § 387j(a)(2)(A).

13.     A new tobacco product that is required by 21 U.S.C. § 387j(a) to have premarket review and does not have an MGO in effect under 21 U.S.C. § 387j(c)(1)(A)(i) is adulterated under 21 U.S.C. § 387b(6)(A).

14.     A new tobacco product for which a "notice or other information respecting it was not provided as required" under the SE or exemption pathway, including an SE report or an abbreviated report, is misbranded under 21 U.S.C. § 387c(a)(6).

## DEFENDANTS' UNLAWFUL CONDUCT

15.     Defendants receive ENDS products in interstate commerce, which are then delivered or proffered for delivery to their customers.

16.     Defendants also sell and distribute ENDS products in interstate commerce.

17.     Among other ENDS products, Defendants have received, sold, and distributed ENDS products branded under the names Geek Bar, Mr. Fog, RAZ, and HQD. The packaging of these products indicates that they are manufactured in China. The Geek Bar, RAZ, and HQD products were delivered to Defendants' facility from suppliers outside of Illinois.

18.     Defendants maintain a website, www.midwestgoods.com, from which customers can purchase products.

19.     When a customer purchases Defendants' ENDS products, *e.g.,* through the website, Defendants ship their ENDS products from the facility in Illinois to the customer. Defendants' customers include wholesale customers located in states outside of Illinois, including Alabama, Florida, Indiana, Maryland, Missouri, and Virginia.

20.     Defendants' ENDS products are "tobacco products" under 21 U.S.C. § 321(rr). Among other things, Defendants' ENDS products are made or derived from tobacco, or contain nicotine from any source, and are intended for human consumption.

21.     Defendants' ENDS products were not commercially marketed in the United States as of February 15, 2007, so they are "new tobacco products" under 21 U.S.C. § 387j(a)(1).

22.     As new tobacco products, Defendants' ENDS products must receive approval from FDA to be lawfully marketed, through either (1) the PMTA pathway, (2) the SE pathway, or (3) the exemption pathway.

23.     Defendants' ENDS products do not have an SE order or found-exempt order in effect, so they are required by 21 U.S.C. § 387j(a)(2)(A) to have premarket review.

24.     Defendants' ENDS products do not have an MGO in effect under 21 U.S.C. § 387j(c)(1)(A)(i), so they are adulterated under 21 U.S.C. § 387b(6)(A).

25.     Additionally, neither an SE report nor an abbreviated report has been submitted for Defendants' ENDS products. Accordingly, Defendants' ENDS products are also misbranded under 21 U.S.C. § 387c(a)(6).

## DEFENDANTS' HISTORY OF MISCONDUCT

26.     FDA has warned Defendants about their misconduct and explained that continued violations could lead to enforcement action, including an injunction.

27.     Following an inspection in August 2024, FDA sent Defendant Midwest Goods a Warning Letter dated January 8, 2025, which explained, among other things, that based on a review of Defendants' records, Defendants were distributing and offering for sale tobacco products that were adulterated and misbranded tobacco products under the Act, including a Mr. Fog ENDS product.

28.     FDA's Warning Letter referenced Mr. Fog Bubble Gang Blue Raspberry 100mL 12mg/mL, and stated that Defendants market "new tobacco products in the United States that lack premarket authorization." The Warning Letter directed Defendants to a website hosted on www.fda.gov that has a list of products that received marketing authorization orders. The Warning Letter also explained that "[a]ll new tobacco products on the market without the statutorily required premarket authorization are marketed unlawfully and are subject to enforcement" and that

"[t]he violations discussed in this letter do not necessarily constitute an exhaustive list." The Warning Letter emphasized that Defendants "should take prompt action to address any violations" and "take any necessary actions to bring [their] tobacco products into compliance."

29.     On January 29, 2025, Defendant Midwest Goods responded to the Warning Letter through counsel.  In its response, Defendant Midwest Goods acknowledged receipt of the Warning Letter and stated that it had "ceased all sales of the Mr. Fog Bubble Gang Blue Raspberry 100 mg 12 mg/mL bottle e-liquid product on or about January 10, 2025" and that it "does not intend to carry, market, or offer this product for sale going forward." Defendant Midwest Goods did not respond to FDA's warning that all products that lack premarket authorization are marketed unlawfully or make representations about any other product.

30.     Between August 12 and 14, 2025, FDA investigators returned to the facility. Their inspection revealed that Defendants continue to receive, distribute, offer for sale, and sell adulterated and misbranded ENDS products in interstate commerce. Specifically, Defendants are receiving, holding, and offering for sale, among other products:

a.      Mr. Fog Doozy Ice Cube 40k (Mint), the retail packaging of which indicates the ENDS product was manufactured in China, from a supplier in Illinois, and subsequently shipped to a customer in Indiana;

b.      RAZ 25K LTZ 5% Fire and Ice, the retail packaging of which indicates the ENDS product was manufactured in China, from a supplier in Florida, and subsequently shipped to a customer in Alabama;

c.      HQD Cuvie BAR 5% Lime Passion Fruit, the retail packaging of which indicates the ENDS product was manufactured in China, from a supplier in Florida, and subsequently shipped to customers in Maryland and Florida; and

d.      Geek Bar Pulse Disposable 5% Savers Edition Drop Sour Savers, the retail packaging of which indicates the ENDS product was manufactured in China, from a supplier in New York, and subsequently shipped to customers in Missouri and Virginia.

## ONGOING VIOLATIONS

31.     Despite prior warnings and notifications from FDA, Defendants have not brought themselves into compliance with the Act.

32.     Unless restrained by this Court, Defendants are likely to continue to violate the Act in the manner set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      Enter judgment against Defendants and in favor of the Plaintiff for violations of the Act as alleged in this Complaint;

B.       Permanently restrain and enjoin, under 21 U.S.C. § 332(a), Defendants, and each and all of their directors, officers, agents, representatives, employees, attorneys, successors, assigns, and any and all persons in active concert or participation with any of them, from doing or causing to be done any of the following acts:

(1)     introducing or delivering for introduction into interstate commerce ENDS products, which are tobacco products within the meaning of 21 U.S.C. § 321(rr), that are adulterated and misbranded, in violation of 21 U.S.C. § 331(a); and

(2)     receiving in interstate commerce ENDS products, which are tobacco products within the meaning of 21 U.S.C. § 321(rr), that are adulterated and misbranded, and delivering or proffering for delivery such tobacco products for pay or otherwise, in violation of 21 U.S.C. § 331(c).

C.       Order that FDA be authorized pursuant to this injunction to inspect Defendants'

places of business and website(s), and all records relating to the sale and distribution of

Defendants' ENDS products, to ensure continuing compliance with the terms of the injunction,

with the costs of such inspections to be borne by Defendants at the rates prevailing at the time the

inspections are accomplished;

D.       Award Plaintiff its costs incurred in pursuing this action, including the costs of

investigation to date; and

E.       Award such other equitable relief as the Court deems just and proper.


DATED: September 10, 2025                           Respectfully Submitted,

ANDREW S. BOUTROS                                  BRETT A. SHUMATE
United States Attorney                              Assistant Attorney General
                                                   Civil Division

s/Scott D. Heffron
SCOTT D. HEFFRON                                   SARMAD M. KHOJASTEH
Assistant United States Attorney                   Acting Deputy Assistant Attorney General
219 S. Dearborn Street, Suite 500
Chicago, Illinois 60505                            LISA K. HSIAO
312-886-4190                                       Acting Director
                                                   Consumer Protection Branch

                                                   JAMES T. NELSON
                                                   Senior Trial Attorney
                                                   U.S. Department of Justice
                                                   450 5th Street, N.W.
                                                   Washington, DC 20044
                                                   Tel: 202-616-2376
                                                   james.nelson2@usdoj.gov

                                                   *Attorneys for Plaintiff*
                                                   *United States of America*


9

ROBERT FOX FOSTER
Acting General Counsel
Chief Counsel for Foods, Research, and
Drugs
U.S. Department of Health and Human
Services

SEAN R. KEVENEY
Chief Counsel
Food and Drug Administration

SHANNON M. SINGLETON
Deputy Chief Counsel, Litigation

JAMES ALLRED
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD  20993-0002

*Of Counsel*